UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNION FEDERAL BANK and WATERFIELD FINANCIAL CORPORATION,<br><br>    Plaintiffs,<br><br>    v.<br><br>GLENN HOWARD, individually and doing business as HOWARD GROUP APPRAISALS, and STERLING REALTORS & APPRAISERS, LLC,<br><br>    Defendants. | CAUSE NO. 1:05-CV-00031 |

**OPINION AND ORDER**

**I. INTRODUCTION**

Defendant Glenn Howard, individually and doing business as Howard Group Appraisals ("Howard"), of Defendant Sterling Realtors & Appraisers, LLC ("Sterling"), appraised certain real property at the request of Plaintiffs Union Federal Bank and Waterfield Financial Corporation, a wholly-owned subsidiary of Union Federal Bank (collectively referred to herein as "Plaintiff"), which Plaintiff then relied upon when extending loans to its customers. (Am. Compl. ¶¶ 9, 15, 16, 26.) Plaintiff contends, however, that after conducting an internal investigation, it discovered that Howard's appraisals were false and misleading (*id*. ¶¶ 18-22); therefore, it filed this action contending that Defendants violated the Racketeering Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962, by planning and forming an

enterprise that delivered fraudulent real estate appraisals (*id*. ¶ 37).[1]  Howard and Sterling have each moved to dismiss the RICO claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Docket # 36, 38.)  After considering the motion and the relevant law, the Court will grant Howard's motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

Howard is a licensed residential real estate appraiser who performs appraisals under the name of Sterling Realtors & Appraisers, LLC.[4] (Am. Compl. ¶¶ 14, 17, Ex. A.)  In January 2003, Plaintiff asked Howard to perform real estate appraisals on certain properties; Howard agreed and performed appraisals at Plaintiff's request between March 17, 2003, and November 19, 2003, on seventy-four properties located primarily in Wayne Township in Allen County, Indiana.[5] (*Id*. ¶¶ 9, 15, 18.)  Plaintiff then relied on Howard's appraisals in extending loans to its customers. (*Id*. ¶ 26.)

Sometime thereafter, Plaintiff became concerned about property vacancy, property values, and loan delinquencies associated with the properties that Howard appraised, and decided

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331.   Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.  Plaintiff also asserts claims of breach of contract, fraud, constructive fraud, defrauding a financial institution, breach of fiduciary duty, and negligence pursuant to supplemental jurisdiction (Am. Compl. ¶¶ 39-65); however, Howard's motion to dismiss does not challenge these supplemental claims on the merits.

[2] The Court is issuing a separate opinion today concerning Sterling's motion to dismiss.

[3] For purposes of its review of Howard's motion to dismiss, the Court assumes the truth of all well-pled allegations and draws all reasonable inferences in the light most favorable to the Plaintiff. *Pearman v. Norfolk & Western Ry. Co.*, 939 F.2d 521, 522 (7th Cir. 1991).

[4] While the record is unclear as to the exact relationship between Howard and Sterling, it appears that Howard acts as an agent of, or independent contractor to, Sterling.

[5] Fifty-eight of the seventy-four appraisals were performed on properties owned by the same four individual investors.

to investigate the portfolio of loans supported by his appraisals. (*Id*. ¶ 19.) Plaintiff had all of the properties independently reappraised and found that some of Howard's appraisals (1) stated that a property had been rehabilitated or improved when it had not; (2) contained incorrect photos or sketches; (3) listed incorrect owners; (4) failed to disclose prior sales; or (5) appraised the wrong property. (*Id*. ¶¶ 20-22.) The investigation further revealed that Howard's appraisals reflected property values far in excess of fair market value, as the aggregate value of the seventy-four properties on Howard's appraisals was $3,865,000, while the aggregate value on the reappraisals was $2,352,000. (*Id*. ¶¶ 25, 27.)

Plaintiff estimates that it suffered in excess of $500,000 in damages due to Howard's allegedly fraudulent appraisals, as many loans it extended in reliance on Howard's appraisals were ultimately foreclosed and resold. (*Id*.) Hence, Plaintiff filed the instant action with this Court to obtain relief. (*Id*.)

On March 31, 2005, Defendants filed their first motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court granted without prejudice on May 6, 2005. (Docket # 24, 26, 32.) Plaintiff then filed an amended complaint on June 10, 2005, which Defendants have each again moved to dismiss pursuant to Rule 12(b)(6). (Docket # 36, 38.)

### III. STANDARD OF REVIEW

A complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts which would support his claim for relief. *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). In determining the propriety of dismissal under Rule 12(b)(6), the court must "accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences therefrom in favor of the plaintiff." *Perkins v. Silverstein*, 939

3

F.2d 463, 466 (7th Cir. 1991).  The purpose of the motion to dismiss is to test the legal sufficiency of the complaint and not to decide the merits. *Triad Assoc., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989), *abrogated on other grounds*, *Bd. of County Comm'rs, Waubunsee County, Kan. v. Umbehr*, 518 U.S. 668 (1996).  "If it appears beyond doubt that plaintiffs can prove any set of facts consistent with the allegations in the complaint which would entitle them to relief, dismissal is inappropriate." *Perkins*, 939 F.2d at 466.

To state a viable RICO claim, a plaintiff must show "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995).  Furthermore, "allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires a plaintiff to plead all averments of fraud with particularity." *Slaney v. The Int'l Amateur Athletic Found.*, 244 F.3d 580, 597 (7th Cir. 2001).  "Accordingly, a RICO plaintiff must, at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Id*.  "Moreover, in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998); *see also Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing RICO claim for "lump[ing] all of the defendants together" and failing to specify "who was involved in what activity").

## IV. DISCUSSION

### *A. Plaintiff Fails to Sufficiently Allege the Enterprise Prong*

The Seventh Circuit has declared that "[a] RICO complaint must identify the enterprise." *Richmond*, 52 F.3d at 645. "While a RICO enterprise can be formal or informal, some type of organizational structure is required." *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000); *see also Richmond*, 52 F.3d at 645 ("The hallmark of an enterprise is a structure."). More specifically, a RICO enterprise must have "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making," with "goals separate from the predicate acts themselves." *Stachon*, 229 F.3d at 675 (internal quotation marks omitted).

Here, Plaintiff alleges that the enterprise was comprised of an association in fact among Sterling and Howard, both individually and as an agent of his sole proprietorship, with Howard performing the appraisals and Sterling carrying out various administrative tasks, such as setting and collecting fees.[6] While Plaintiff may contend that its incorporation of the roles of Howard and Sterling in its amended complaint sufficiently remedies its prior deficiencies in pleading the enterprise prong, *see Burdette v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992) ("there need not be

---

[6] Howard argues in his motion that the amended complaint makes no allegation that Howard Group Appraisals is a legally separate entity (such as a limited liability company or corporation) from Glenn Howard, and thus Howard Group Appraisals and Glenn Howard are one and the same; accordingly, in Howard's line of reasoning, the enterprise prong must fail at the onset because an enterprise cannot consist of an association in fact comprised of an employer and its employees. *See Fitzgerald v. Chrysler*, 116 F.3d 225, 226 (7th Cir. 1997). However, because it currently is unclear whether Howard is an employee of, or rather has a contractual relationship with, Sterling, this line of reasoning is not determinative and the Court will delve into other aspects of Plaintiff's pleading of the enterprise. *Compare id.* (emphasizing that an employer and its employees cannot constitute a RICO enterprise), *with Williams v. Ford Motor Co.*, 11 F. Supp. 2d 983, 986-88 (N.D. Ill. 1998) (finding an auto dealer under a contractual arrangement with its manufacturer were sufficiently distinct to adequately allege an association in fact enterprise comprised of the two entities).

much structure, but the enterprise must have some continuity and some differentiation of the roles within it"), the Court finds it still falls short of the mark.

First, Plaintiff's pleading fails to give any indication that the enterprise was organized in a manner amenable to hierarchical or consensual decision making, as the amended complaint gives no hint who the mastermind of the operation is or how decisions for the enterprise are made. *See Stachon*, 229 F.3d at 675.  Second, Plaintiff fails to explain how Howard's role in the alleged enterprise was separate from his regular appraisal business, as one would reasonably assume that Howard performed other appraisals, whether individually or on Sterling's behalf, in addition to those associated with the alleged scheme. *See Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993) ("liability depends on showing that the defendants conducted or participated in the conduct of the *'enterprise's* affairs,' not just their *own* affairs"); *see also Stachon*, 229 F.3d at 676 (dismissing RICO complaint because plaintiff "fail[ed] to offer the slightest sign of a 'command structure' separate and distinct from the [corporate defendant] (which is not the purported enterprise)"); *Richmond*, 52 F.3d at 647 (affirming the dismissal of a RICO complaint because it failed to show how the defendants conducted the affairs of the alleged enterprise, rather than just their own affairs); *ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, No. 1:04CV492, 2005 WL 1162889, at *11 (N.D. Ind. May 16, 2005) (dismissing RICO complaint, noting that it failed to "make any allegations regarding the role of the players in the enterprise, beyond their roles in the specific transactions by which [plaintiff] claims to have been injured.").

Third, and most significantly, Plaintiff lamely attempts to scrape together a purpose and goal for the enterprise by merely restating what the enterprise allegedly does: "The purpose and

goal of the enterprise was to defraud the Plaintiffs and to appraise the [p]roperties at a sufficiently high value in order that they could be refinanced." (Am. Compl. ¶ 35.) The Court fails to see how the enterprise's stated purpose and goal is separate from the enterprise's execution of a "scheme and artifice to defraud Plaintiffs in the form of false, fraudulent and misleading appraisals." (*Id*. ¶ 33.) "RICO plaintiffs cannot establish structure by defining the enterprise through what it supposedly does." *Stachon*, 229 F.3d at 676; *see also Slaney*, 244 F.3d at 600 n.11; *ABN AMRO Mortgage Group*, 2005 WL 1162889, at *10-11.

Therefore, Plaintiff's amended complaint against Howard will be dismissed as a result of Plaintiff's failure to sufficiently assert the enterprise prong of the RICO claim.

### B. Plaintiff Fails to Sufficiently Allege the Pattern Requirement

To establish the pattern requirement of a RICO claim, a plaintiff must show that defendant committed at least two predicate acts of racketeering within a ten-year period. 18 U.S.C. § 1961(5); *Vicom,* 20 F.3d at 779. Because the RICO statute was enacted out of concern for long-term criminal conduct, rather than sporadic fraudulent acts, a RICO plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Vicom*, 20 F.3d at 779 (quoting *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The relationship part of this test requires that the predicate acts be "committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Id*. (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)). The continuity portion of the test is both a closed-ended and open-ended concept, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id*. at 779 (quoting *H.J.*, 492 U.S. at 241).

7

In order to demonstrate closed-ended continuity, a plaintiff must show that the related predicate acts occurred over a substantial period of time. *Id*.  To further ferret out this prong, courts consider the five factors set out in *Morgan*: (1) the length of time over which the predicate acts were committed; (2) the number and variety of predicate acts; (3) the number of victims; (4) the presence of separate schemes; and (5) the occurrence of distinct injuries. *Id*. at 780 (quoting *Morgan*, 804 F.2d at 975); *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1049 (7th Cir. 1998).  The courts apply these factors "with an eye toward achieving a natural and commonsense result, recognizing that Congress was concerned in RICO with long-term criminal conduct." *Vicom,* 20 F.3d at 780 (internal quotation marks omitted).  In contrast to closed-ended continuity, a plaintiff may establish open-ended continuity regardless of the duration of the conduct. *Id*. at 782.  Open-ended continuity is present when "(1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting an ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id*. (quoting *H.J.*, 492 U.S. at 242-43).

In the instant case, it is clear that the relationship prong of the pattern requirement is satisfied, as the seventy-four appraisals all occurred within an eight-month time span, the sole victim was Union Federal and its wholly-owned subsidiary, Waterfield, and a single type of misconduct was alleged – the performance of misleading appraisals.  Hence, whether the pattern requirement can be satisfied will hinge upon the viability of the continuity prong.  To this end, Plaintiff concedes this is not a case of open-ended continuity; rather, it contends it has sufficiently alleged closed-ended continuity. (*See* Pls.' Br. in Supp. of Mot. in Opp'n to Mot. to Dismiss of Glenn Howard Individually and D/B/A Howard Group Appraisals at 5-8.)  Thus, the

8

Court will analyze the five *Morgan* factors to examine the legal sufficiency of Plaintiff's pleading of closed-ended continuity.

The first factor, duration, "is perhaps the closest thing we have to a bright-line continuity test . . . ." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992). In the instant case, the alleged enterprise involved a single scheme which spanned only eight months (March, 2003, to November, 2003). In *Midwest Grinding*, while the Seventh Circuit acknowledged that it had not established a *per se* duration requirement, it held that a time frame of less than nine months did not satisfy the durational aspect of closed-ended continuity, citing an expansive number of Seventh Circuit cases where a duration of less than two years was insufficient to establish closed-ended continuity. *Id*. (collecting cases); *see also ABN AMRO Mortgage Group*, 2005 WL 1162889, at *12. Furthermore, the Seventh Circuit summarized its stance on duration in *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992), when it stated that an eight-month, single victim, single scheme RICO claim "was precisely the type of short-term, closed-ended fraud that, subsequent to *H.J., Inc.*, [the Seventh Circuit] consistently has held does not constitute a pattern." The Court finds that Plaintiff has in this case pled precisely that same type of "short-term, closed-ended fraud," and therefore the most significant factor, duration, of the five-factor analysis cuts against Plaintiff.

The next factor, the number and variety of predicate acts, also fails to lend solid support to Plaintiff's claim. While certainly there is a plethora of predicates (i.e. seventy-four appraisals), there is absolutely no variety to the acts – all are misleading real estate appraisals performed for one victim. *See generally Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990) (failing to satisfy continuity prong when a large number of predicate acts occurred,

but "they were not of great variety"); *Meyer Material Co. v. Mooshol*, 188 F. Supp. 2d 936, 942 (N.D. Ill. 2002) (finding that no variety in seventy-two predicate acts of mail fraud weighed against establishing a pattern of racketeering activity).

The third factor, the number of victims involved, undisputedly fares worse in the analysis. The alleged scheme involved only Union Federal and its subsidiary, Waterfield; there are no allegations that the enterprise implemented a fraudulent appraisal scheme against any other banks or entities. The fourth factor, the presence of separate schemes, arrives quickly at the same result as the third. Plaintiff has alleged the presence of just one scheme – "execute a scheme and artifice to defraud Plaintiffs in the form of false, fraudulent and misleading appraisals." Therefore, both the third and fourth factors utterly fail to support the closed-ended continuity prong. *See Olive Can*, 906 F.2d at 1151.

The outcome of the analysis of the fifth Morgan factor, the occurrence of distinct injuries, is ultimately more favorable to Plaintiff. In *Vicom*, the Seventh Circuit found that identical economic injuries suffered over a two-year period stemming from a single contract were not the type of injuries Congress intended to compensate via its RICO statute, concluding that only a single injury occurred. *Vicom*, 20 F.3d at 782; *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 663 (7th Cir. 1992) (finding that multiple acts of mail fraud occurring pursuant to a single scheme resulted in nondistinct injuries); *U.S. Textiles v. Anheuser Busch Cos., Inc.*, 911 F.2d 1261, at 1269 (7th Cir. 1990) (finding that each fraudulent shipment of product under a single contract failed to establish distinct injuries necessary to support continuity requirement); *CIB Bank v. Esmail,* No. 04 C 4870, 2004 WL 3119027, at *6 (N.D. Ill. Dec. 28, 2004) (holding that ten allegedly fraudulent draw requests on a single loan were "ten repeated instances of the

10

same fraudulent act, which, . . . are properly considered only one distinct injury of improperly used loan funds.").

However, the Seventh Circuit reached the contrary result in *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987). There, the Court concluded that in a scheme involving mail and wire fraud a distinct injury (fifty-seven in total) resulted each time defendant prepared a false invoice for plaintiff. *Id.* at 1304-05; *see also Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 524 (7th Cir. 1995) (distinguishing cases which involve interdependent predicate acts in one scheme, ultimately concluding that distinct injuries resulted from each act of mail and wire fraud); *Ill. Dep't of Revenue v. Phillips*, 771 F.2d 312 (7th Cir. 1985) (mailing of nine fraudulent monthly sales tax returns found to constitute distinct injuries, as each tax return was considered a separate lie which resulted in a separate overpayment). In the instant case, while all of the seventy-four appraisals stemmed from one contractual arrangement with Waterfield, each misleading appraisal caused Plaintiff to issue a separate and distinct loan, ultimately resulting in harm to Plaintiff, and had little or nothing to do with previous or subsequent appraisals. Therefore, the Court finds the instant case is more analogous to *Liquid Air* than *Vicom*, and is persuaded that each appraisal likely caused a distinct injury to Plaintiff. Nonetheless, the Court need not dwell on this last factor, as no single *Morgan* factor, regardless of its outcome, is necessarily dispositive. *Morgan*, 804 F.2d at 976. Four of the five factors, including the most significant (duration), militate against a finding of closed-ended continuity, and the fifth factor alone will not save the day for Plaintiff. Accordingly, as the Court finds that Plaintiff's claim is not the type of "long-term criminal conduct" Congress was concerned with in RICO, dismissal of the claim is the "natural and commonsense result." *See Vicom*, 20 F.3d at

779.

In summary, clearly "[t]his closed-ended scheme has none of the trappings of a long-term criminal operation that carries with it a threat to society; it is, in short, a run-of-the-mill fraud case that belongs in state court." *Midwest Grinding,* 976 F.2d at 1025.  Therefore, the Court finds through its analysis of the *Morgan* factors that Plaintiff has failed to establish the closed-ended continuity prong of the pattern requirement.  Accordingly, Plaintiff's RICO claim will be dismissed on these grounds as well.[7] *See CIB Bank*, 2004 WL 3119027, at *7 (quoting *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 935 F.2d 815, 820 (7th Cir. 1991)) ("Insufficiently pleading the pattern element 'rings the death knell' for civil RICO claims.").

## V.  DISMISSAL OF SUPPLEMENTAL CLAIMS

When all federal claims drop out of a case before trial, the general rule is that the district court should relinquish jurisdiction over the supplemental claims, especially when there has been little discovery or other pretrial preparation. *See* 28 U.S.C. § 1367; *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997).  Here, the RICO claim subject to dismissal is the sole claim which created federal jurisdiction; therefore, Plaintiff's remaining supplemental claims against Howard will also be dismissed without prejudice.

## VI. CONCLUSION

Plaintiff has now tried twice to fit a square peg in a round hole by pleading a plain-vanilla state fraud or negligence action as a federal RICO claim; to afford Plaintiff a third

---

[7]Because Plaintiff's complaint fails on two prongs of the RICO claim, the Court has no obligation to analyze the sufficiency of the pleading concerning the remaining elements of the RICO claim;   however, the Court's silence as to these remaining elements should not be interpreted to mean that they are adequately or inadequately alleged.  *See Slaney*, 244 F.3d at 598 n.9.

12

attempt would be futile.  Therefore, for the reasons stated herein, Howard's motion to dismiss is hereby GRANTED (Docket # 36), and the clerk is directed to enter a judgment in favor of Howard, dismissing Plaintiff's federal RICO claim with prejudice, and all supplemental claims against Howard without prejudice.  SO ORDERED.

     Enter for this 23rd day of August, 2005.

          S/Roger B. Cosbey
          Roger B. Cosbey
          United States Magistrate Judge